**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Benjamin J. Brysacz (Cal. Bar No. 297886)
bbrysacz@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (applying *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendants
Kellogg Company, Kellogg Sales Company,
Pringles LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ALLRED and MANDY C. ALLRED, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY, a Delaware corporation; KELLOGG SALES COMPANY, a Delaware corporation; and PRINGLES LLC, a Delaware limited liability company.<br><br>Defendants. | Case No. 3:17-cv-01354-AJB-BLM<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND**<br><br>Hearing Date: October 12, 2017<br>Hearing Time: 2:00 p.m.<br>Judge: The Honorable Anthony J. Battaglia<br>Courtroom: 4A |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

ARGUMENT ............................................................................................................... 4

    I.  At the Time of Removal, Plaintiffs' Potential Damages Exceeded CAFA's $5 Million Requirement Under Their Restitution/Disgorgement Theory ........ 4

    II.  Defendants Have Shown That the Amount in Controversy Exceeds $5 Million Based on Facts and Reasonable, Fact-Based Estimates ....................... 6

    III.  Plaintiffs' Motion for Remand Ignores the Complaint's Request for Punitive Damages and Attorneys' Fees ........................................................... 10

    IV.  Defendants Removed This Action in Good Faith and Plaintiffs' Are Not Entitled to Remand to Pursue an Injunctive Relief Remedy .......................... 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armstrong v. Ruan Transportation Corp.*,
   No. 16-1143, 2016 WL 6267931 (C.D. Cal. Oct. 25, 2016) ...................................... 7, 8

*Bayol v. Zipcar, Inc.*,
   No. 14-2483, 2015 WL 4931756 (N.D. Cal. Aug. 18, 2015) ........................................ 10

*Bell-Sparrow v. Wiltz*,
   No. 12-2782, 2014 WL 2927354 (N.D. Cal. June 27, 2014) ....................................... 10

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) ........................................................................................ 11

*Dart Cherokee Basin Operating Co. v. Owens*,
   135 S. Ct. 547 (2014) .................................................................................................... 4

*Deutsche Bank Nat. Trust v. Heredia*,
   No. 12-04405, 2012 WL 4714539 (N.D. Cal. Sept. 14, 2012) *report and
   recommendation adopted*, No. 2012 WL 4747157 (N.D. Cal. Oct. 3,
   2012) ............................................................................................................................. 6

*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007) ....................................................................................... 10

*Hurd v. Am. Income Life Ins.*,
   No. 13-5205, 2013 WL 5575073 (C.D. Cal. Oct. 10, 2013) ........................................ 10

*Ibarra v. Manheim Investments, Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ................................................................................ 6, 7, 9

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................... 11

*LaCross v. Knight Transp. Inc.*,
   775 F.3d 1200 (9th Cir. 2015) .................................................................................... 5, 9

*Lee v. Am. Nat. Ins. Co.*,
   260 F.3d 997 (9th Cir. 2001) ....................................................................................... 11

*Lee v. Equifax Info. Servs., LLC*,
　No. 13-4302, 2013 WL 6627755 (N.D. Cal. Dec. 16, 2013) ........................................ 10

*Lewis v. Verizon Commc'ns, Inc.*,
　627 F.3d 395 (9th Cir. 2010) ........................................................................................ 4

*Lowdermilk v. United States Bank Nat'l Ass'n*,
　479 F.3d 994 (9th Cir. 2007) ........................................................................................ 4

*Machlan v. Procter & Gamble Co.*,
　77 F. Supp. 3d 954, 961 (N.D. Cal. 2015) .................................................................. 12

*Matheson v. Progressive Specialty Ins. Co.*,
　319 F.3d 1089 (9th Cir. 2003) ...................................................................................... 4

*Mejia v. Prologix Distribution Servs. (W.), LLC*,
　No. 12-4840, 2012 WL 5522309 (N.D. Cal. Nov. 14, 2012) ...................................... 10

*Mezzadri v. Med. Depot, Inc.*,
　113 F. Supp. 3d 1061, 1065-66 (S.D. Cal. 2015) ....................................................... 12

*Mezzadri v. Med. Depot, Inc.*,
　No. 14-2330, 2015 WL 12572619 (S.D. Cal. Feb. 12, 2015) ..................................... 12

*Molina v. Lexmark International, Inc.*,
　No. 08-04796, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008) ..................................... 6

*Prize Frize, Inc. v. Matrix (U.S.), Inc.*,
　167 F.3d 1261 (9th Cir. 1999) ...................................................................................... 4

*Rea v. Michaels Stores Inc.*,
　742 F.3d 1234 (9th Cir. 2014) ...................................................................................... 5

*Riggins v. Riggins*,
　415 F.2d 1259 (9th Cir. 1969) ...................................................................................... 6

*Rodriguez v. AT&T Mobility Servs. LLC*,
　728 F.3d 975 (9th Cir. 2013) ........................................................................................ 4

*Rodriguez v. US Bank Nat'l Ass'n*,
　No. 16-5590, 2016 WL 5419403 (C.D. Cal. Sept. 26, 2016) ....................................... 4

*Salcido v. Evolution Fresh, Inc.*,
　No. 14-09223, 2016 WL 79381 (C.D. Cal. Jan. 6, 2016) ............................................. 9

*Simmons v. PCR Tech.*,
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ................................................................ 10

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  159 F.3d 1209 (9th Cir. 1998) ................................................................................ 6

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .............................................................................. 12

*Tehrani v. Macys W. Stores, Inc.*,
  No. 15-7286, 2016 WL 1559085 (C.D. Cal. Apr. 18, 2016) .................................. 8

*Tompkins v. Basic Research LL*,
  No. 08-244, 2008 WL 1808316 (E.D. Cal. Apr. 22, 2008) .................................. 10

*Waller v. Hewlett-Packard Co.*,
  No. 11-454, 2011 WL 8601207 (S.D. Cal. May 10, 2011) ................................... 5

*Wilson v. Airborne, Inc.*,
  No. 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ................................ 11

*Worthams v. Atlanta Life Ins. Co.*,
  533 F.2d 994 (6th Cir. 1976) .................................................................................. 6

**STATUTES**

28 U.S.C. § 1441(a) ................................................................................................... 11

California Labor Code § 2802 ..................................................................................... 5

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ...................................... 1, 4

# INTRODUCTION

Plaintiffs seek to remand their case to state court, claiming that the amount in controversy does not exceed the $5 million requirement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). In support of their argument, they strenuously protest that they are not seeking full restitution or disgorgement, and that instead they are merely seeking to recover the alleged "price premium" that Defendants charge for their Pringles Salt and Vinegar Flavored Potato Chips

Plaintiffs doth protest too much. Their very own complaint belies their newly concocted claim in their motion to remand that they are not seeking to recover the full purchase price they paid for the Pringles product. In their complaint, they claim that Pringles are "illegal to sell" and are "valueless." Compl. ¶ 60. They further say that the class "suffered, and continue to suffer, *ascertainable losses in the form of the purchase price* they paid for the unlawfully labeled and marketed Product." *Id.* ¶ 109 (emphasis added). And they further reiterate that the class "suffer[s] an ascertainable loss in the form of, inter alia, *monies spent to purchase the Product* they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees, and costs of suit." *Id.* ¶ 142 (emphasis added).

It is black-letter law that the amount in controversy is measured at the time of removal based on what amount could potentially be recovered by plaintiffs. Defendants here have shown that Plaintiffs seek at least $13 million in restitution, which is the estimated sales of Pringles in California during the class period. Plaintiffs cannot now — post-removal — attempt to rewrite their own words in their complaint in a bid to avoid federal jurisdiction. The Ninth Circuit has rejected such a tactic. Accordingly, their motion for remand must be denied.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit in San Diego County Superior Court on May 11, 2017, alleging that the packaging of Kellogg's "Pringles Salt and Vinegar Flavored Potato Crisps"

falsely represents that the product is "flavored only with natural ingredients, when in fact it contains undisclosed artificial flavors in violation of state and federal law" and that it gives consumers the "impression they are buying a premium 'all natural' product." *See* Compl. ¶¶ 9, 10.

Plaintiffs allege six causes of action for violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, as well as for breach of express and implied warranties, against Kellogg Company, Kellogg Sales Company, and Pringles LLC. *See id.* ¶¶ 98-179. Plaintiffs seek compensatory damages, punitive damages, disgorgement, restitution of all monies unlawfully obtained from the sale of the Pringles, injunctive relief, and attorneys' fees on behalf of themselves, the class of persons who purchased Pringles Salt and Vinegar Flavored Potato Crisps in California at any time during the period six years prior to the filing of the complaint, and the general public. *See id.* ¶ 144, 153, 179; Prayer for Relief.

While the Complaint in the alternative asks for damages in the form of the alleged "price premium" charged, it makes clear that it also seeks full restitution or disgorgement of the purchase price of the Pringles product. Throughout the complaint, Plaintiffs repeatedly assert that they can and will seek full restitution or disgorgement amounting to the purchase price of the Pringles product:

- Plaintiffs plead that "[b]ecause the Product is illegal to sell in California, **it is valueless**." Compl. ¶ 60 (emphasis added).
- The class allegedly suffered "**ascertainable losses in the form of the purchase price** they paid for the unlawfully labeled and marketed product." *Id.* ¶ 109 (emphasis added).
- The class members "suffer[ed] **an ascertainable loss in the form of . . . monies spent to purchase the Product** they otherwise would not have." *Id.* ¶ 142 (emphasis added).
- Plaintiffs stated that they seek an "order for the **disgorgement and restitution of**

2

***all* monies from the sale of the Product** which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs." *Id.* ¶ 153 (emphasis added).[1]

Defendants removed this action to this Court on July 5, 2017 by filing a Notice of Removal accompanied by a supporting declaration of Joseph T. Kramer, Sr. Notice of Removal (ECF No. 1). Mr. Kramer — Senior Brand Manager, Kellogg Salty Snacks — is in charge of marketing of the Pringles product and has access to sales figures. He explained that Kellogg cannot track precise sales figures by states because Kellogg sells its products to retailers and distributors, who may then ship them to multiple states. Kramer Decl. (ECF No. 1-4) at ¶ 4. But based on his knowledge of the Pringles product and the snack market, he estimated that Kellogg's sales of Pringles Salt and Vinegar Potato Crips to California were approximately $13,170,600 from 2013 to May 2017. *See id.* at ¶ 6.[2]

After removing the case, Defendants subsequently moved to dismiss for failure to state a claim on July 19, 2017. Defs.' Mot. to Dismiss (ECF No. 7). After filing a response to Defendants' motion to dismiss, Plaintiffs moved to remand this action to California Superior Court. Plfs.' Mot. for Remand (ECF No. 11).

---

[1] *See also* Compl. ¶ 52, 59 (Pringles are "illegal to distribute or sell in California," and that Plaintiffs "would not have purchased the Product in the absence of Defendants' misrepresentations and omissions."); ¶ 73 ("Because Plaintiffs reasonably assumed the Product to be free of artificial flavoring based on its label, when it was not, they did not receive the benefit of their purchases."); ¶ 141 (plaintiffs were "denied the benefit of the bargain").

[2] In their Complaint, Plaintiffs assert that the relevant class period begins six years prior to the filing of their complaint. Compl. ¶ 80. At this time, however, Defendants lack access to gross sales data for Pringles Salt & Vinegar Potato Crisps prior to 2013. Kramer Decl. (ECF No. 1-4) at ¶ 3.

# ARGUMENT

## I. At the Time of Removal, Plaintiffs' Potential Damages Exceeded CAFA's $5 Million Requirement Under Their Restitution/Disgorgement Theory.

Plaintiffs' sole contention in their motion to remand is that Defendants have not met CAFA's $5 million amount in controversy requirement. 28 U.S.C. § 1332(d). In determining the amount in controversy, the "question" is to determine "only the amount that plaintiff has put at issue, not how much the defendant actually owes." *Rodriguez v. US Bank Nat'l Ass'n*, No. 16-5590, 2016 WL 5419403, at *4 (C.D. Cal. Sept. 26, 2016); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing defendant . . . supplied an affidavit to show that the potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies Verizon's burden").[3]

In removing the case, Defendants supplied a declaration from its Senior Brand Manager who estimated that California sales of Pringles Salt & Vinegar Flavored Potato

---

[3] Plaintiffs' description of the legal standard for removal relies heavily on pre-CAFA case law and *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007). *Lowdermilk* is, in many respects, no longer good law. Although *Lowdermilk* recognized CAFA's preponderance of the evidence standard, it also stood for the proposition that plaintiffs could avoid federal jurisdiction by "aver[ing] damages below $5 million" and that defendants must prove the existence of the requisite amount in controversy "to a legal certainty." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 980-81 (9th Cir. 2013). As the Ninth Circuit later explained, those holdings have since been "effectively overruled" by the U.S. Supreme Court and that "[p]laintiff may not 'sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court.'" *Id.* at 981 (quoting *Lowdermilk*, 479 F.3d at 999). Plaintiffs' remaining citations to cases suggesting the "removal statute is strictly construed against removal jurisdiction," (*Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999)), and that any "doubt" about removal requires a remand, (*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)), are not class actions and were decided before CAFA was enacted. The U.S. Supreme Court recently made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

Crisps are at least $13.1 million during the class period. *See* Kramer Decl. (ECF No. 1-4) at ¶ 6. Plaintiffs in their Complaint made clear that they are seeking full restitution or disgorgement of the purchase price of the Pringles products that the putative class bought. *See supra* at 2:20 – 3:4; *see, e.g.,* Compl. ¶ 109 (the class "suffered, and continue to suffer, *ascertainable losses in the form of the purchase price* they paid for the unlawfully labeled and marketed Product") (emphasis added). Accordingly, Defendants met their burden of showing that "the potential damages could exceed the jurisdictional amount" of $5 million. *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014).[4]

Federal courts in the Ninth Circuit have routinely included the full restitution amount in determining the amount in controversy. For example, in *Waller v. Hewlett-Packard Co.*, No. 11-454, 2011 WL 8601207, at *2 n.3 (S.D. Cal. May 10, 2011), the court calculated the amount in controversy based on the full purchase price — even though the plaintiff argued it would be "unrealistic" to expect the putative class members to receive a "100% reimbursement" — because the inquiry for removal is based on "the relief a plaintiff seeks, not what the plaintiff may reasonably or ultimately obtain." That is exactly the situation here.

Plaintiffs try to run away from their own words in their complaint by now claiming in their motion to remand that they will only seek alleged "price premium" damages. But the Ninth Circuit has previously rejected this type of tactic. In *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015), plaintiffs at oral argument argued that "the class may not be able to prove all the elements for reimbursement under California Labor Code § 2802, so the amount in controversy likely will not exceed $5 million." *LaCross*, 775 F.3d at 1203. The Ninth Circuit rejected that argument, stating that this position "conflat[es] the amount in controversy with the amount of damages ultimately recoverable." *Id.* Similarly,

---

[4] As explained in Defendants' removal papers, Defendants' position is that Plaintiffs are not entitled to "full" restitution or damages under California law because they derived some value from the Pringles they ate. But for removal purposes, courts have taken the complaint's allegations at face value in determining the amount of controversy.

the Ninth Circuit earlier in a different case held that damages may change as a result of events that occurred *after* removal, but that it cannot be used to avoid federal jurisdiction. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209, 1213 (9th Cir. 1998).[5]

Plaintiffs' reliance on *Molina v. Lexmark International, Inc.* is unavailing. No. 08-04796, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008). That case dealt with the issue of whether a *settlement offer* from plaintiff qualifies as "other paper" constituting grounds for removal; the court concluded that it did not, particularly where that settlement offer was only a "bold optimistic prediction." *Id.* at *4. The case does not alter the rule that the amount in controversy is based on the relief plaintiff seeks in the complaint.

## II. Defendants Have Shown That the Amount in Controversy Exceeds $5 Million Based on Facts and Reasonable, Fact-Based Estimates.

The Ninth Circuit has held that courts can consider "direct or circumstantial" evidence in determining the amount in controversy, and that "the damages assessment may require a chain of reasoning that includes assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As long as "those assumptions" are not "pulled from thin air but" rather have "some reasonable ground underlying them," they are valid for establishing the amount in controversy for removal purposes. *Id.*

Here, the $13.1 million sales figures in California are based on facts and reasonable assumptions — and did not come out of "thin air." *Ibarra*, 775 F.3d at 1199. Mr. Kramer, the Senior Brand Manager for Salty Snacks at the Kellogg Company, provided a sworn

---

[5] *See also Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 998 (6th Cir. 1976) (recoverable damages might drop under the jurisdictional limit after the application of a legal defense, but that this post-removal event does not destroy federal jurisdiction); *Deutsche Bank Nat. Trust v. Heredia*, No. 12-04405, 2012 WL 4714539, at *2 (N.D. Cal. Sept. 14, 2012), *report and recommendation adopted*, No. 2012 WL 4747157 (N.D. Cal. Oct. 3, 2012) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses"); *Riggins v. Riggins*, 415 F.2d 1259, 1261-62 (9th Cir. 1969) (statute of limitations defense could bar some relief sought but did not affect amount in controversy).

declaration stating that the national sales figures for Pringles Salt & Vinegar Flavored Potato Snacks from 2013 to May 2017 were $108,400,000. Kramer Decl. (ECF No. 1-4) ¶ 1.[6] Like almost all consumer product companies, Kellogg does not sell its products directly to consumers, but rather sells them to distributors and retailers, who then ship the items to specific stores in many states. As a result, it is not possible to ascertain the precise sales figures for each particular state. But based on his experience overseeing the Pringles brand and his knowledge of the snack market, Mr. Kramer estimated that the sales to California would be roughly commensurate to its population percentage vis-à-vis the United States population (*i.e.*, $13,170,600, or approximately 12.15% of its national gross sales). *See* Kramer Decl. (ECF No. 1-4) ¶¶ 4-6. These are reasonable assumptions because Mr. Kramer has no reason to believe sales of Pringles Salt and Vinegar Potato Crisps in California differ substantially from per capita sales in other states. After all, selling Pringles in California is not like trying to sell parkas in Arizona in July. In short, the $13.1 million sales figure was not speculation, but a "chain of reasoning" with "some reasonable ground underlying [it.]" *Ibarra*, 775 F.3d at 1199.

Plaintiffs cite *Armstrong v. Ruan Transportation Corp.*, No. 16-1143, 2016 WL 6267931, at *2 (C.D. Cal. Oct. 25, 2016) for the proposition that defendants "may not rely on statistical assumptions to prove the amount-in-controversy requirement." That case, however, does not stand for the proposition that assumptions are never an appropriate part of defendants' proof; to the contrary, the Ninth Circuit in *Ibarra* held that they often are a valid component of a damage estimate, as long as they are reasonable. Rather the *Armstrong* court made that statement because the particular defendant in that case made completely

---

[6] Mr. Kramer also explained that Defendants' sales data "reflect Kellogg's sales to distributors and retailers" and that "the sales figures for the amount paid by consumers will be higher because distributors and retailers will typically sell Pringles Salt and Vinegar Potato Crisps to consumers with a price mark-up." *Id.* ¶ 6. Thus, there is reason to believe that the amount in controversy would almost certainly be higher than $13 million, given that Plaintiffs' seek restitution and refunds based on what they paid to purchase Pringles.

unsubstantiated statistical assumptions and grossly misread the allegations in plaintiffs' complaint in a self-serving and implausible manner. In trying to prove that more than $5 million was in controversy, the *Armstrong* defendant assumed that plaintiffs' allegations that "'Defendant failed to provide all the legally required unpaid, off-duty meal [and rest] periods,'" meant that "'Defendant failed to provide [each and every] legally required unpaid, off-duty meal [and rest] period [to every class member.]' This is far from a reasonable assumption." *Armstrong*, 2016 WL 6267931, at *3 (alterations in original). Moreover, the *Armstrong* defendant "did not present any facts supporting its assumption that 'one meal and rest period violation per workweek' per class member is appropriate 'for . . . its [exposure] calculations.'" *Id.* The *Armstrong* court also noted that in wage and hour cases, typically defendants "'ha[ve] access to employment and payroll records that would allow [them] to provide more accurate figures,' rather than mere estimations." *Id.* at *4 (quoting *Nolan v. Kayo Oil Co.*, No. 11-707, 2011 WL 2650973, at *5) (alterations in original). Here, Defendants have explained that they do not track state-level sales figures because they sell to distributors and wholesalers.

*Tehrani v. Macys W. Stores, Inc.*, is similarly distinguishable on its facts. In that case, removing defendants made unrealistic factual assumptions about the class members, including that every class member worked full-time, took no vacation, and used their employer-provided phone for business 100% of the time. *Tehrani v. Macys W. Stores, Inc.*, No. 15-7286, 2016 WL 1559085, at *7 (C.D. Cal. Apr. 18, 2016) ("By assuming that the same number of employees worked throughout the year and that those employees worked consistently on the same days throughout the year, when Macy's had access to the accurate numbers, Macy's has made an assumption 'not grounded in real evidence.'") (quoting *Ibarra*, 775 F.3d at 1199).

Plaintiffs' motion for remand notably omits any description of the facts from these cases, making it seem as though *Armstrong* and *Tehrani* stand for a categorical rule against statistical assumptions when in reality the cases rest on much narrower grounds. In fact, the

Ninth Circuit in *Ibarra* held that statistical assumptions are acceptable as long as they are "reasonably grounded" in facts and are not concocted out of "thin air." 775 F.3d at 1199. Here, Defendants have provided reasonable factual support for their estimations about the California-specific sales figures for Pringles in the form of a declaration from an executive in charge of the Pringles brand making reasonable estimates based on his knowledge of the market coupled with population data from the U.S. Census Bureau.

An instructive case is *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015), where the Ninth Circuit applied the *Ibarra* framework to the defendant's evidence and "conclude[d] that because defendants relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million, defendants have met their burden of proof." 775 F. 3d at 1201. Plaintiffs there were employees of the defendant trucking company who were entitled to reimbursement for expenditures related to owning and operating trucks. To determine the amount in controversy, the defendant trucking company estimated total damages by multiplying "actual invoiced fuel costs" from one quarter by the number of quarters in the class period. *Id.* at 1203. The court found this logical and reasonable, despite the fact that the invoices were based on company-provided fuel cards and it was possible that drivers were using the cards for non-work purposes and that the invoices might not be perfect match for fuel costs related to business operations. *Id.* Defendants here applies similar logical assumptions to estimate the California states figures.[7]

---

[7] Plaintiffs make the odd suggestion that declarations do not qualify as "summary judgment-type" evidence supposedly required for removal purposes. Plfs.' Mem. at 7. But as the Ninth Circuit explained, "parties may submit evidence outside the complaint, *including affidavits or declarations,* or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (emphasis added). *See, e.g., Salcido v. Evolution Fresh, Inc.*, No. 14-09223, 2016 WL 79381, at *2 (C.D. Cal. Jan. 6, 2016) (removal based on declaration containing an employee's "best approximation of company data, based on his knowledge of the company's operations").

### III. Plaintiffs' Motion for Remand Ignores the Complaint's Request for Punitive Damages and Attorneys' Fees.

Plaintiffs also seek punitive damages and attorneys' fees, items that were highlighted in Defendants' Notice of Removal but ignored by Plaintiffs' Motion for Remand. Both of these categories could add substantial amounts in controversy, beyond the approximately $13 million already proven by Defendants.

Punitive damages are included in calculating the amount in controversy. Compl. ¶¶ 12, Prayer for Relief; *Bell-Sparrow v. Wiltz*, No. 12-2782, 2014 WL 2927354, at *4-5 (N.D. Cal. June 27, 2014) (including punitive damages award with 5.5 multiplier in amount-in-controversy in light of plaintiff's request for punitive damages in connection with claim for intentional misrepresentation); *Lee v. Equifax Info. Servs., LLC*, No. 13-4302, 2013 WL 6627755, at *4 (N.D. Cal. Dec. 16, 2013); *Hurd v. Am. Income Life Ins.*, No. 13-5205, 2013 WL 5575073, at *6-7 (C.D. Cal. Oct. 10, 2013); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002). As recognized in *Hurd*, punitive damages awards "can be substantial." 2013 WL 5575073, at *6-7. Even "applying the 'conservative' estimate of a 1:1 ratio between compensatory damages and punitive damages" adds more than $13,170,600 to the amount in controversy. *Tompkins v. Basic Research LL*, No. 08-244, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (including potential punitive damages in analyzing amount in controversy).

Plaintiffs also seek attorneys' fees. *See, e.g.*, Compl. ¶¶ 12, 142, 153, Prayer for Relief. Attorneys' fees are properly considered as part of the amount in controversy for the purposes of determining federal jurisdiction. *See Bayol v. Zipcar, Inc.*, No. 14-2483, 2015 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015) ("The amount in controversy can include . . . attorneys' fees[.]"); *Mejia v. Prologix Distribution Servs. (W.), LLC*, No. 12-4840, 2012 WL 5522309, at *2 (N.D. Cal. Nov. 14, 2012) (explaining that "attorneys' fees are included in the calculation" of CAFA's amount in controversy requirement); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Fee requests in consumer class

actions, such as this lawsuit, are typically significant. *See, e.g.*, *Wilson v. Airborne, Inc.*, No. 07-770, 2008 WL 3854963, at *12 (C.D. Cal. Aug. 13, 2008) (awarding $3,459,946 in attorneys' fees in deceptive advertising class action); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 46 (2008) (awarding attorneys' fees of $2.04 million as part of the settlement of consumer class action); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL 1956267, at *16 (S.D.N.Y. May 1, 2008) (class counsel incurred $1,279,405 in breach-of-warranty class action). Although Defendants have adequately established jurisdiction based on the approximately $13 million put at issue by Plaintiffs' claims for full restitution—more than twice the jurisdictional requirement of $5 million— the full amount in controversy is likely significantly larger when punitive damages and attorneys' fees are included.

### IV. Defendants Removed This Action in Good Faith and Plaintiffs' Are Not Entitled to Remand to Pursue an Injunctive Relief Remedy.

Defendants pointed out in their motion to dismiss that Plaintiffs lack Article III standing for injunctive relief because they no longer reasonably face the possibility of being allegedly deceived by the Pringles label now that they supposedly know the "truth." Plaintiffs now try to exploit their inability to seek injunctive relief to demand that their case be remanded to state court to pursue injunctive relief. Plfs.' Mem. (ECF No. 11-1) at 9. This argument lacks merits.

First, the lack of standing for injunctive relief does not deprive this Court of federal jurisdiction because Plaintiffs are still seeking monetary damages. As the Ninth Circuit put it, "it is clear that, as a general matter, there is original jurisdiction, and therefore removal jurisdiction under 28 U.S.C. § 1441(a), over a case as long as there is subject matter jurisdiction over one or more of the claims alleged" and "a district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it." *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001) (citing *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 391–92 (1998)), *superseded in part on other*

*grounds by statute as stated in Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n. 10 (9th Cir. 2011).

Second, as Defendants noted in their Motion to Dismiss, the single case relied upon by Plaintiffs has been expressly rejected by this Court as an "outlier." Defs.' Reply Br. (ECF No. 13) at 9-10 (distinguishing *Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 961 (N.D. Cal. 2015)). This Court has previously concluded that plaintiffs bringing deceptive advertising claims lack standing for injunctive relief, and has called *Machlan* an "outlier" insofar as it suggests that federal subject matter jurisdiction "bow[s] to state interests." *Mezzadri v. Med. Depot, Inc.*, 113 F. Supp. 3d 1061, 1065-66 (S.D. Cal. 2015) (Battaglia, J.); *see also Mezzadri v. Med. Depot, Inc.*, No. 14-2330, 2015 WL 12572619, at *6 (S.D. Cal. Feb. 12, 2015) (Battaglia, J.) (holding that plaintiff lacks standing to pursue injunctive relief where "prospective relief would not dress the injury now that Plaintiff is fully aware of the [product's] limitations").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for remand.

Dated: August 21, 2017

JENNER & BLOCK LLP

/s/ Kenneth K. Lee
Kenneth K. Lee

Attorneys for Defendants
Kellogg Company, Kellogg Sales Company, Pringles LLC