UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Barry Allred and Mandy C. Allred, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Kellogg Company, a Delaware Corporation, et al.,<br><br>Defendants. | Case No.: 17-cv-1354-AJB-BLM<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br>**(Doc. No. 11)** |

Plaintiffs Barry and Mandy Allred seek remand to state court alleging Kellogg failed to satisfy the amount-in-controversy requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Because the Court finds the amount-in-controversy requirement is met, the Court **DENIES** Allred's motion.

## I.  BACKGROUND

This action arises from Kellogg's alleged violations of California's consumer protection laws relating to the packaging, labeling, and advertising of Kellogg's "Salt and Vinegar Flavored Potato Crisps." (Doc. No. 1-2 at 5 ¶ 5–11.) Allred brings this lawsuit on behalf of "[a]ll consumers who purchased the [p]roduct from a retailer within the state of California . . . at any time during the period six (6) years prior to the filing of this Complaint

1

and continuing until this Class is certified . . . ." (*Id.* at 16 ¶ 80.)

Allred originally filed the action in San Diego Superior Court. (*Id.* at 2.) Kellogg removed the action, arguing CAFA's requirements for removal were met. (Doc. No. 1 at 38.) Allred then filed the instant motion to remand alleging Kellogg failed to meet the minimum amount-in-controversy requirement. (Doc. No. 11.)

## II. LEGAL STANDARDS

CAFA gives federal courts jurisdiction over certain class actions if the class has more than 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million. U.S.C. § 1332(d)(2), (5)(B); *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Allred only challenges the amount-in-controversy element, as such, the Court will only address that issue. When a defendant alleges the amount-in-controversy exceeds the CAFA threshold, the notice to remove need only include "a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (holding the district court erroneously remanded to state court when the defendant had submitted an affidavit in support of his calculation on the amount-in-controversy). "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. However, when those allegations are challenged by the plaintiff, *Dart* instructs that "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553–54 (internal quotations omitted).

## III. DISCUSSION

Allred argues remand to state court is necessary because Kellogg (1) failed to carry its burden of proving that CAFA's jurisdictional amount is met, and (2) removed the action in bad faith. (*See* Doc. No. 11-1.)

### A. The Amount-in-controversy is Met

It is unclear from the face of Allred's complaint if the amount-in-controversy exceeds $5 million because Allred does not plead specific damage amounts. (Doc. No. 1-

2

17-cv-1354-AJB-BLM 


and continuing until this Class is certified . . . ." (*Id.* at 16 ¶ 80.)

Allred originally filed the action in San Diego Superior Court. (*Id.* at 2.) Kellogg removed the action, arguing CAFA's requirements for removal were met. (Doc. No. 1 at 38.) Allred then filed the instant motion to remand alleging Kellogg failed to meet the minimum amount-in-controversy requirement. (Doc. No. 11.)

## II. LEGAL STANDARDS

CAFA gives federal courts jurisdiction over certain class actions if the class has more than 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5 million. U.S.C. § 1332(d)(2), (5)(B); *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Allred only challenges the amount-in-controversy element, as such, the Court will only address that issue. When a defendant alleges the amount-in-controversy exceeds the CAFA threshold, the notice to remove need only include "a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (holding the district court erroneously remanded to state court when the defendant had submitted an affidavit in support of his calculation on the amount-in-controversy). "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. However, when those allegations are challenged by the plaintiff, *Dart* instructs that "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553–54 (internal quotations omitted).

## III. DISCUSSION

Allred argues remand to state court is necessary because Kellogg (1) failed to carry its burden of proving that CAFA's jurisdictional amount is met, and (2) removed the action in bad faith. (*See* Doc. No. 11-1.)

### A. The Amount-in-controversy is Met

It is unclear from the face of Allred's complaint if the amount-in-controversy exceeds $5 million because Allred does not plead specific damage amounts. (Doc. No. 1-

2 at 29–30.) Kellogg, however, contends the amount-in-controversy exceeds $5 million. (Doc. No. 1 at 4–7.) In support of removal, Kellogg submitted a declaration of Joseph T. Kramer, Sr., Kellogg's senior brand manager. (Doc. No. 1-4 at 3 ¶ 1.) Mr. Kramer admitted that although state-specific sales records are not available, he was able to approximate sales based on population statistics and gross sales of the product. (*Id.* at 3 ¶¶ 3–5.) He estimated potential sales in the class period to be approximately $13 million. (*Id.* at 3 ¶ 6.) To get this figure, Mr. Kramer divided California's population (39,250,017) by the U.S. population (323,127,513) using July 2016 population estimates, which calculated to 12.15%. (*Id.* ¶ 5.) He then divided national sales ($108,400,000 from 2013-2016) by 12.15%, which calculates to $13,170,600. (*Id.* ¶ 6.) He estimates this as the total California sales. (Doc. No. 1-4 at 3.) Mr. Kramer noted the sales figure is feasibly higher because the distributors and retailers Kellogg sold products to likely mark-up the price when sold to consumers. (*Id.*) This, Kellogg argues, along with punitive damages and attorney's fees, meets the amount-in-controversy requirement. (Doc. Nos. 1 at 6–8; 14 at 9–11.)

Allred takes issue with Kellogg's calculation methods, arguing specifically that (1) Kellogg improperly uses statistics and assumptions in calculating damages; (2) Kellogg cannot assume a full restitution award of 100% of all possible damages; and (3) Kellogg failed to provide "summary judgment-quality" damages calculations. (Doc. No. 11-1 at 2.)

### *1. Damages Calculations May Use Statistical Assumptions Based in Reason*

Allred first argues that estimations, speculation, and "statistical assumptions" cannot be used to prove the amount-in-controversy requirement. (Doc. No. 11-1 at 10–11.) Kellogg correctly responds that parties may use estimations and assumptions to prove the amount-in-controversy so long as they are based in reason. (Doc. No. 14 at 11.)

The Ninth Circuit has held that a defendant may rely on "a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount-in-controversy exceeds $5 million" so long as "the chain of reasoning and its underlying assumptions" are "reasonable." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015).

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount-in-controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Allred's reliance on a recent California case is mistaken, as that case is distinguishable. (Doc. No. 11-1 at 10–11.) In *Armstrong v. Ruan Trans. Co.*, the Court held that parties "may not rely on statistical assumptions to prove the amount-in-controversy requirement." EDCV 16-1146-VAP(SPx), 2016 WL 6267931, at *2 (C.D. Cal. Oct. 25, 2016) (listing cases). However, in *Armstrong*, Ruan Transportation made assumptions in calculating damages in an hour and wage claim which were unsupported by any facts, save for a declaration. *Id.* at *3. Ruan assumed that "one meal and rest period violation per workweek per class member is appropriate" in calculating damages, yet the declaration Ruan submitted failed to address meal and rest period violations, complaints received regarding these violations, how break periods were scheduled, "or anything else to provide factual support for Defendant's assumption of 'one meal and rest period violation per workweek' for every class member." *Id.* Thus, the Court held, "as Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week, the Court finds it has failed to sustain its evidentiary burden for purposes of removal." *Id.* (internal citations omitted). However, *Armstrong* also relied on the Ninth Circuit's *Ibarra* rule that a "damages assessment may require a chain of reasoning that includes assumptions." *Id.* (quoting *Ibarra*, 775 F.3d at 1199). Thus, Allred is simply incorrect that statistical assumptions may not be used.

The Court finds that Kellogg has presented a reasonable damages assessment estimating the amount-in-controversy based in fact. Kellogg provided nationwide sales figures, an explanation for the lack of state-specific sales figures, and estimations of population based on recent United States census bureau figures. (*Id.* at 3–4.) The Court finds it reasonable to assume that if California has 12.5% of the nation's population, it may also have at least 12.5% of Kellogg's sales. At the very least, Kellogg has provided the

"chain of reasoning" from their evidence to their assumption as required by the Ninth Circuit. With a total calculation that is 2.63 times over the minimum amount-in-controversy required, even if Kellogg was off by 50% in their estimations, they would still meet the $5 million threshold in spades. Thus, the Court finds Kellogg's calculation model sufficient.

### 2. Kellogg's Damages Calculations Are Appropriate

Next, Allred argues that Kellogg cannot assume "a restitution award of 100% of all possible damages," stating Kellogg "incorrectly assume[d] that Plaintiffs and the class members will seek a full refund for each retail unit . . . purchased in California during the class period." (Doc. No. 11-1 at 11–12.) Allred cites to a California Central District case, which states a "Defendant may not assume a 100% rate without supporting such an assumption." *Tehrani v. Macys West Stores, Inc.*, Case No. LA CV15-07286 JAK (Ex), 2016 WL 1559085, at *8 (C.D. Cal. Apr. 18, 2016). Kellogg retorts that the $5 million also includes attorney's fees and punitive damages. (Doc. No. 14 at 15.) Punitive damages may "be included in a computation of the amount-in-controversy necessary for this Court's jurisdiction." *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963). Attorney's fees may be calculated as well. *Bayol v. Zipcar, Inc.*, No. 12-4840, 2013 WL 4931756, at *7 (N.D. Cal. Aug. 18, 2015). As stated above, even if Kellogg's statistical assumptions were reduced by 50%, with attorney's fees and punitive damages calculated in, $5 million is easily exceeded. Thus, the Court finds Kellogg meets its burden of establishing the minimum amount-in-controversy. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("defendant must provide evidence establishing that it is '*more likely than not*' that the amount in controversy exceeds that amount." (emphasis in original) (citation omitted)); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 29 1199, 1204 (E.D. Cal. Feb. 27, 2008) (stating the burden is not daunting).

### 3. Kellogg's Evidence is Sufficient

Allred's last argument regarding Kellogg's calculations of the amount-in-controversy asserts Kellogg's "evidence and calculations" do not rise to summary

judgment level quality. (Doc. No. 11-1 at 15.) In support, Allred cites cases which hold that calculations may not be considered evidence unless they are made in good faith, reliable, and based on fact. (*Id.*) *See Ellis v. Pac. Bell Tel. Co.*, No. SACV 10–01141–CJC(FFMx), 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011) (holding a party "may rely on calculations to satisfy their burden so long as their calculations are good faith, reliable estimates based on the pleadings and other evidence in the record."); *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007) (overruled by *Standard Fire*, as stated in *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 977 (9th Cir. 2013). But, as Kellogg points out—and the Court reiterates—"[t]he parties may submit evidence outside the complaint, **including affidavits or declarations**, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)) (emphasis added). The Court already found Mr. Kramer's assumptions and calculations were based in fact and reasonably deduced. Thus, Kellogg's use of a declaration in proving these calculations is appropriate.

### B. Kellogg Did Not Remove in Bad Faith

Allred accuses Kellogg of removing the case in bad faith, stating Kellogg "attested that this Court does have subject matter jurisdiction to hear this action" when they filed removal documents, then reversed course only "days later" in their dismissal motion, where Kellogg argued Allred lacks "Article III standing to pursue public injunctive relief." (Doc. No. 11-1 at 15.) However, Allred is strawmanning Kellogg's positions a bit. Kellogg's arguments—that this Court has subject matter jurisdiction over the case, but that Allred lacks Article III standing for injunctive relief—are legally consistent positions. That said, the Ninth Circuit discussed this puzzling dynamic in a recent decision. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115–16 (9th Cir. 2017). The Court discussed this "perpetual loop" dilemma, stating:

> As the district court in *Machlan* explained, by finding that these plaintiffs fail to allege Article III standing for injunctive relief, we risk creating a "perpetual

6

17-cv-1354-AJB-BLM

loop" of plaintiffs filing their state law consumer protection claims in California state court, defendants removing the case to federal court, and the federal court dismissing the injunctive relief claims for failure to meet Article III's standing requirements. [*Machlan v. Procter & Gamble Co., et al.*, 77 F. Supp. 3d 954, 961 (N.D. Cal. 2015).] On our Article III standing analysis, fully supported for the reasons we have explained by established standing principles, this "perpetual loop" will not occur.

*Davidson*, 873 F.3d at 1116. The Court concluded by resolving the issue "in favor of plaintiffs seeking injunctive relief." *Id.* at 1115. It should be noted *Davidson* came out months after the parties briefed these motions, yet, this is the very problem Allred is complaining of. Nevertheless, the Court rejects Allred's arguments of bad faith. As evident from the district court split, Kellogg's positions are not only logically consistent, but are positions parties have argued—and won on—before. Thus, the Court finds Kellogg's removal and subsequent dismissal motion for lack of Article III standing does not amount to bad faith.

## IV.  CONCLUSION

The Court concludes Kellogg properly alleged the amount-in-controversy exceeds $5 million and that Kellogg did not remove the action in bad faith. Accordingly, the Court **DENIES** Allred's motion for remand. (Doc. No. 11.)

IT IS SO ORDERED.

Dated: January 9, 2018

Hon. Anthony J. Battaglia
United States District Judge

7

17-cv-1354-AJB-BLM